UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELIZABETH L. FISHER, Plaintiff, v. MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | No. CV-09-381-CI ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 15.) Attorney Rebecca M. Coufal represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Elizabeth L. Fisher (Plaintiff) protectively filed for supplemental security income (SSI) on May 25, 2007. (Tr. 111, 176.) Plaintiff alleged an onset date of March 23, 2002.[1]  (Tr. 111.)

---

[1] At the hearing, the ALJ noted a previous application was filed on December 5, 2005, and indicated a willingness to reopen the prior

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -1


Benefits were denied initially and on reconsideration. (Tr. 67, 73.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ R.J. Payne on February 3, 2009. (Tr. 25-64.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 45-63.) Medical experts David R. Rullman, M.D., and Ronald M. Klein, Ph.D., also testified. (Tr. 27-45.) The ALJ denied benefits (Tr. 11-21) and the Appeals Council denied review. (Tr. 1.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative record and will, therefore, only be summarized here.

Plaintiff was born February 15, 1960, making her 48 years old at the time of the hearing. (Tr. 111.) Plaintiff dropped out of school in the eleventh grade but later obtained her high school diploma. (Tr. 41.) Plaintiff has work experience as a food service manager and a van driver and dispatcher. (Tr. 130.) Plaintiff claims fibromyalgia, celiac sprue, panic disorder, arthritis, agoraphobia and blood clots limit her ability to work. (Tr. 45-47, 129.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination

---

application. (Tr. 26-27.) Plaintiff amended the onset date to December 15, 2005. (Tr. 27.) Under Title XVI, SSI benefits are not payable before the date of application. 20 C.F.R. §§ 416.305, 416.330(a); S.S.R. 83-20.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -2

is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -3

weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§

404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482

U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 25, 2007. (Tr. 13.) At step two, he found Plaintiff has the following severe impairment: fibromyalgia. (Tr. 13.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 16.) The ALJ then determined "the claimant has the residual functional capacity to perform a full range of light work. The claimant can lift or carry 20 pounds occasionally and frequently lift or carry 10 pounds. The claimant can sit for six hours and stand or walk for six hours in an eight-hour workday." (Tr. 16.) At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (Tr. 19.) After taking into account Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are a significant number

of jobs in the national economy that the Plaintiff can perform. (Tr. 20.) Thus, the ALJ concluded Plaintiff has not been under a disability as defined in the Social Security Act since May 25, 2007, the date the application was filed. (Tr. 20.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff argues the ALJ: (1) erred at step two by finding fibromyalgia is Plaintiff's only severe impairment; (2) failed to fully and fairly develop the record; (3) failed to consider lay witness testimony; and (4) improperly relied on the grids at step five. (Ct. Rec. 14 at 11-20.) Defendant argues the ALJ: (1) made a proper step two finding; (2) fully developed the record; (3) properly limited lay witness testimony at the hearing; and (4) made a step five finding supported by substantial evidence. (Ct. Rec. 16 at 2-12.)

**DISCUSSION**

**1.   Lay Witness Testimony**

Plaintiff argues the ALJ erred by failing to consider lay witness testimony. (Ct. Rec. 14 at 15-17.) An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2007); *Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Id.* In this case, the ALJ refused to allow lay witness testimony at the hearing and failed to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -7

1  address evidence offered as an alternative to testimony.

2  　　　Plaintiff's friend, Lee Godwin, came to the hearing and Plaintiff
3  wanted her to testify. (Tr. 25.) At the end of the hearing, the ALJ
4  stated, "I don't have time today for Ms. Godwin's testimony, but I'll
5  certainly give you 20 days to get me her affidavit and we'll consider
6  that." (Tr. 63.) Plaintiff's counsel objected and the ALJ reiterated
7  that time constraints were the basis for his decision not to allow Ms.
8  Godwin to testify. (Tr. 63.) On February 24, 2009, within 20 days of
9  the hearing, Ms. Godwin executed an affidavit describing her
10 observations of Plaintiff's condition. (Tr. 185-86.) The ALJ did not
11 mention Ms. Godwin's affidavit in the opinion or discuss any lay
12 witness evidence. The ALJ's failure to address Ms. Godwin's affidavit
13 was error.

14 　　　Defendant argues the error should be dismissed as harmless error.
15 (Ct. Rec. 16 at 10.) In *Stout v. Comm'r, Soc. Sec. Admin.*, the 9th
16 Circuit held, "where the ALJ's error lies in a failure to properly
17 discuss competent lay testimony favorable to the claimant, a reviewing
18 court cannot consider the error harmless unless it can confidently
19 conclude that no reasonable ALJ, when fully crediting the testimony,
20 could have reached a different disability determination." 54 F.3d
21 1050, 1056 (9th Cir. 2006). Ms. Godwin's affidavit includes statements
22 which support Plaintiff's testimony regarding her limitations,
23 including observations about limitations on activities of daily
24 living, constant pain and limited mobility. In this case, where the
25 ALJ declined to accept testimony from Plaintiff's friend for the sole
26 reason that it would affect the scheduling of other cases, it was
27 particularly important that the ALJ consider Ms. Godwin's affidavit in
28 lieu of testimony. The court cannot confidently conclude that if Ms.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -8

Godwin's testimony were credited, no reasonable ALJ could have reached a different disability determination. As such, the error is not harmless and the matter must be remanded for proper consideration of Ms. Godwin's affidavit.

**2.  Duty to Develop the Record**

Plaintiff argues the ALJ failed to meet his duty to develop the record at step three. (Ct. Rec. 14 at 9-10.) In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. § 404.1519a. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150.

Plaintiff argues the ALJ should have attempted to obtain a psychological evaluation from Dr. Bot and records from the original diagnosis of celiac sprue. At the hearing, Plaintiff's attorney said they could try to find the record of the original diagnosis of celiac

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -9

sprue, but she was not sure they would be able to do so. (Tr. 54.) The ALJ said he was going to keep the record open for 20 days; if the records could be located they were to be submitted. (Tr. 54.) Plaintiff did not submit additional records showing the diagnosis of celiac sprue.

The ALJ did not fail to develop the record with regard to celiac sprue for three reasons. First, the diagnosis of celiac sprue is not questioned by the ALJ. Dr. Rullman's testimony establishes that even if celiac sprue is a definitive diagnosis, the condition is controllable with a gluten-free diet. (Tr. 30.) Thus, although Dr. Rullman testified there was no information in the record about the original biopsy or diagnosis of celiac sprue (Tr. 30-31), he opined he did not believe the diagnosis relates to Plaintiff's dominant problem of musculoskeletal discomfort due to fibromyalgia. (Tr. 31.) Dr. Rullman's testimony suggests that the diagnostic information about celiac sprue would have little impact on his opinion, and it would not establish effects of celiac sprue upon Plaintiff's ability to work. As a result, there is no ambiguity for the ALJ resolve by obtaining original diagnostic records regarding celiac sprue.

Second, Plaintiff was not able to provide specific information about her original diagnosis. (Tr. 54-55.) She could not remember when the diagnosis was made or the diagnosing physician's name, specialty, or location.[2] (Tr. 54-55.) Even if the ALJ chose to pursue evidence of the original diagnosis, he had no information from which

---

[2] Plaintiff "figured" that celiac sprue had been diagnosed three years before the hearing, and testified that she might have gotten the diagnosis in Idaho, but "that's a total blank to me." (Tr. 55.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -10

to start. Third, Plaintiff indicated that she would attempt to obtain the records, although she was skeptical they could be located. (Tr. 54.) It is elemental that if the Plaintiff assures the ALJ she will pursue certain records, the ALJ would neither be expected to duplicate efforts nor commit error by failing to do so. For these reasons, the ALJ did not err by failing to develop the record with respect to celiac sprue.

With respect to the psychological evidence, Plaintiff points to a Psychiatric Review Technique form dated July 26, 2007, signed by Edward Beaty, Ph.D. (Tr. 264-77.) The "Consultant's Notes" attached to the form mention a May 16, 2006, "CE" by Dr. Bot containing diagnoses of probable ongoing alcohol abuse, probable malingering of symptoms with regard to cognition/anxiety and embellishment physical health disorder, and personality disorder, and a GAF score of 60-61. (Tr. 276.) The notes also mention a Mental Residual Functional Capacity form and Psychiatric Review Technique form completed by Dr. Bailey on June 5, 2006, and suggest a psychological evaluation report also was prepared in June 2006. (Tr. 276.) Dr. Bailey evidently assessed some moderate limitations. (Tr. 276.) Neither Dr. Bot's report nor Dr. Bailey's June 2006 records are part of the record.

The reference to June 2006 psychological evaluations by Dr. Bot and Dr. Bailey create an ambiguity in the record. The ALJ gave little weight to the opinion of Dr. Beaty, a state consulting psychologist who identified evidence of depression, personality disorder, and history of alcohol abuse and moderate limitations in six categories. (Tr. 260-77.) The ALJ based his rejection of Dr. Beaty's opinion on the testimony of the psychological expert, Dr. Klein, who testified that the record contains no indication of problems related to alcohol

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -11

and no evidence to substantiate the diagnosis of personality disorder. (Tr. 15, 37-38.) However, it appears that Dr. Beaty's assessment was based in part on two reports which are missing from the record, one of which included diagnosis of probable alcohol abuse and personality disorder. (Tr. 277.) If Dr. Klein and the ALJ had the opportunity to review those reports, they may have made findings similar to Dr. Beaty or given more weight to Dr. Beaty's opinion which includes some moderate limitations. (Tr. 260-62.) Furthermore, the 2006 reports of Dr. Bot and Dr. Bailey are from the relevant period, whereas two other psychological reports considered by Dr. Klein and the ALJ were from 2000 and 2001, before the alleged onset date.[3] As a result, the ALJ should have further developed the record by obtaining the 2006 reports prepared by Dr. Bot and Dr. Bailey.

**3. Step Two**

Plaintiff argues the ALJ failed to identify all of Plaintiff's severe impairments and therefore erred at step two. (Ct. Rec. 14 at 11-14.) Specifically, Plaintiff argues that celiac sprue and psychological impairments should have been determined to be severe impairments. (Ct. Rec. 14 at 11-14.) At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To satisfy step two's requirement of a severe impairment,

---

[3] It is noted that the ALJ rejected Dr. Dalley's December 2000 assessment and Dr. Bailey's November 2001 assessment, and Plaintiff has not challenged the ALJ's findings regarding those reports. (Tr. 14, 189-205.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -12

the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28. The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." S.S.R. 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." *Id.*

Further, even where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's

ability to perform work activities. 20 C.F.R. § 416.929. If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.*

As explained in the Commissioner's policy ruling, "medical evidence alone is evaluated in order to assess the effects of the impairments on ability to do basic work activities." S.S.R. 85-28. Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence.

### a. Celiac Sprue

Plaintiff points to one piece of medical evidence in arguing that celiac sprue should be a severe impairment. (Ct. Rec. 14 at 13.) Dr. Wu, a rheumatologist, examined Plaintiff on September 20, 2006. (Tr. 226-28.) Dr. Wu noted a history of GI symptoms and biopsy-proven celiac sprue disease.[4] (Tr. 226.) Dr. Wu indicated musculoskeletal problems, low vitamin D levels, peripheral neuropathy, and low vitamin B12 levels, as well. (Tr. 227.) Plaintiff reported adherence to a gluten-free diet for about nine months after she was diagnosed with celiac sprue, but admitted she was no longer on a gluten-free diet. (Tr. 226.) She denied diarrhea or GI symptoms at the time. (Tr.

---

[4]As discussed *supra*, Plaintiff testified she could not recall the name, location, or specialty of the physician who obtained the biopsy, and could not recall the date with specificity. (Tr. 54-55.) The original diagnosis is not part of the record. The medical expert, Dr. Rullman, assumed the diagnosis even though there was no information in the record about the biopsy or original diagnosis. (Tr. 30.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -14

226.) Dr. Wu opined that celiac sprue probably accounted for a large part of Plaintiff's symptoms and encouraged her to adhere to a gluten-free diet, but observed, "she doesn't seem too motivated." (Tr. 227.)

The ALJ acknowledged Dr. Wu's report of diagnosis of celiac sprue by biopsy. (Tr. 15.) He also noted Plaintiff's complaints of frequent diarrhea due to sprue in March and June of 2007, and Plaintiff's testimony that she has abdominal pain.[5] (Tr. 54, 233, 238.) However, the ALJ pointed out that Dr. Rullman testified that

---

[5]The ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of symptoms are not credible to the extent inconsistent with the RFC. (Tr. 17.) If the ALJ finds the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted). The ALJ listed a number appropriate considerations in making the credibility determination which constitute clear and convincing reasons supported by substantial evidence. (Tr. 17-19.) Plaintiff does not challenge the credibility determination.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -15

symptoms of celiac sprue are normally controlled with a gluten-free diet. (Tr. 30, 32.) This is supported by Plaintiff's report to Dr. Hubbard, her treating physician, that when she was able to control her eating she controlled her abdominal pain better. (Tr. 251.) The ALJ observed that Plaintiff testified she has had difficulty following a gluten-free diet and Dr. Wu observed a lack of motivation to do so in July 2006. (Tr. 53, 227.) By December 2006, Plaintiff reported 95% compliance with a gluten-free diet and reported no symptoms of diarrhea or stomach pain. (Tr. 211.) Dr. Hubbard noted Plaintiff's celiac sprue was controlled by diet in July 2007. (Tr. 247.) In January 2008, Plaintiff reported to Dr. Luera during her annual physical exam that she cheats on her diet once in a while, but was doing well overall with respect to celiac sprue. (Tr. 312.) When Plaintiff saw Dr. Wu in September 2008, she denied diarrhea or nausea and celiac sprue was not mentioned. (Tr. 338-41.) No physician described limitations due to celiac sprue and few symptoms were reported to Plaintiff's physicians when she was compliant with a gluten-free diet. Substantial evidence supports the ALJ's conclusion that celiac sprue causes no more than a minimal limitation on Plaintiff's ability to perform work activity. Therefore, the ALJ did not err by failing to identify celiac sprue as a severe impairment.

**b.   Psychological Conditions**

Plaintiff argues the ALJ should have included depression, anxiety and panic attacks as severe impairments. Plaintiff notes that Dr. Klein identified depression not otherwise specified at the hearing and on the Psychiatric Review Technique form. (Tr. 41, 385.) Indeed, the ALJ commenced questioning of Dr. Klein by asking whether the record was sufficient and what were his findings. (Tr. 37.) Dr. Klein

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -16

replied, "It's sufficient, Your Honor.  And there is a 12.04 depressive disorder not otherwise specified.  The other diagnosis that doesn't have a listing associated with it would be malingering." (Tr. 37.)  Later, Dr. Klein testified that Plaintiff does not meet the "C" criteria, leading to an "impairment not severe" rating on the Psychiatric Review Technique form.  (Tr. 41, 382.)  Plaintiff also cites a somewhat unclear discussion between Dr. Klein and the ALJ as to the meaning of Dr. Klein's "not severe" assessment.  (Tr. 41-42.) The ALJ stated, "the way you filled it [the PRT form] out was at not severe, but that not severe goes to not step two, but to basically steps four and five, so I'll just . . . take judicial notice of that." (Tr. 42.)  However:

> The psychiatric review technique described in 20 C.F.R. 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p.  The ALJ seems to have misstated the meaning of Dr. Klein's "impairment not severe" determination at the hearing.

However, the ALJ's decision contains a proper step two analysis of Dr. Klein's finding of no severe impairment.  (Tr. 15-17.)  The regulations provide that functional limitations will be rated in four broad areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -17

20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If the degree of functional limitations in the first three functional areas is rated as "none" or "mild" and "none" in the fourth area, the impairment is generally considered not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1, 416.920a(d)(1). Dr. Klein's specific findings include: no restrictions in activities of daily living; mild limitation in maintaining social functioning; mild limitation in maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 41.) These are consistent with a finding of "not severe" at step two. These factors, along with other substantial evidence, were properly identified and considered by the ALJ in the step two analysis of depression. (Tr. 13-15.) As a result, the ALJ did not err by failing to include depression as a severe impairment at step two.

**4.    Step Five**

Plaintiff argues the ALJ improperly relied on the grids at step five. (Ct. Rec. 14 at 17-18.) The grids are an administrative tool the Commissioner may rely on when considering claimants with substantially uniform levels of impairment. *Burkhart v. Bowen,* 856 F.2d 1335, 1340 (9th Cir. 1988). However, the use of the grids is not always proper. If a claimant has non-exertional limitations[6] that

---

[6]Nonexertional limitations are "all work-related limitations and restrictions that do not depend on an individual's physical strength." Soc. Sec. Rul. 96-8. *See also* 20 C.F.R. Pt. 416.969a; *Derosiers v. Secretary of Health and Human Serv.*, 846 F.2d 573, 579 (9th Cir. 1988).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -18

significantly limit her range of work, the use of the grids in determining disability is inappropriate. *Bates v. Sullivan*, 894 F.2d 1059 (9th Cir. 1990), *overruled on other grounds by Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991). In such instances, a vocational expert must be called to identify jobs that match the abilities of the claimant, given her limitations. *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). Nevertheless, if an ALJ determines that a claimant's non-exertional limitations do not significantly affect her ability to perform a full range of work, then use of the grids is appropriate. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007); *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). In this case, the ALJ determined Plaintiff has no non-exertional limitations. Plaintiff's argument depends upon a finding of psychological impairments which affect her ability to perform a full range of work. On remand, after reevaluation of the evidence consistent with the contents of this order, the ALJ should also review the rest of the sequential evaluation process and apply the grids or call a vocational expert, as is appropriate based on new findings, if any.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the ALJ should consider the lay witness evidence and develop the record regarding the 2006 psychological assessments by Dr. Bot and Dr. Bailey. If necessary, the ALJ may take additional testimony from a psychological expert and reevaluate the sequential process as appropriate after considering such evidence. Accordingly,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -19

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED April 20, 2011.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE